IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION


MATTHEW WILSON,                                          Case No. 1:16-cv-00855-CL

            Plaintiff,

      v.

                                                         OPINION & ORDER

DECIBELS OF OREGON,
INC., and DENNIS
SNYDER,

            Defendants.

_____

CLARKE, Magistrate Judge

      Plaintiff alleges violations of state and federal minimum wage and overtime laws.

Plaintiff's minimum wage and overtime claims are brought pursuant to the Fair Labor Standards

Act and related Oregon state statutes. In addition to these claims, plaintiff brings a claim for

unlawful employment discrimination and wrongful deduction of wages; these claims are brought

exclusively under Oregon law. Plaintiff seeks production of a number of documents, as well as

answers to a number of interrogatories. For the reasons discussed below, the requests are granted in part and denied in part.

## FACTUAL BACKGROUND

On April 26, 2017, the parties notified the Court that they had numerous discovery disputes they were unable to resolve without the Court's involvement. In an attempt to resolve the matter, the Court scheduled a telephonic status conference for May 4, 2017. In addition, the Court instructed the parties to confer and narrow down the discovery disputes to no more than five core issues or disputes that required the Court's decision. The parties did so; the five core issues are as follows:

(1) Whether plaintiff is entitled to other employees' timecards;

(2) whether plaintiff is entitled to contracts between defendants and their cell-phone carrier, invoices and purchase orders for tools, equipment, and company cell phones, and a list of all technicians who have declined to sign deduction authorization forms or who have used a call log;

(3) whether plaintiff's interrogatories violated Local Rule 33-1, and whether defendants' answers are full and fair;

(4) whether plaintiff is entitled to ask whether Dennis Snyder ("Snyder") or other individuals are liable as individuals; and

(5) whether defendants must produce documents related to their policies on sick leave.

The Court addresses each of these issues below.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is
> relevant to any party's claim or defense and proportional to the needs of the

case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Rule 26(b)(1) specifies that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Nevertheless, the court is required to limit the extent of discovery that is otherwise allowed by these rules if the court determinates that (1) the sought-after discovery is needlessly cumulative, duplicative, or can be obtained from a more convenient source; (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or (3) the sought-after discovery exceeds the scope permitted by Rule 26(b)(1). Fed.R.Civ.P. 26(b)(2)(C).

## DISCUSSION

### I.    Timecards

Plaintiff, a former installation technician for defendants, seeks timecards of other installation technicians employed by defendants. In defending against plaintiff's claims for violations of state and federal minimum wage and overtime laws, defendants contend plaintiff did not follow proper procedure in recording hours worked at the beginning of each workday. Plaintiff argues other installation technicians' timecards will shed light on whether the policy he allegedly failed to abide by was in fact a company-wide policy, and whether such policy was followed by none, some, most, or all of defendants' installation technicians.

Defendants object, arguing other installation technicians' timecards are irrelevant. Specifically, defendants argue they have already produced their timecard policies, and whether other technicians were complying with these policies will not change the fact plaintiff was not complying with them. Furthermore, they argue that plaintiff's request for other technicians'

timecards stretching back seven years is unduly burdensome and overly broad, especially given the applicable statute of limitations in this case.

The installation technicians' timecards are relevant. "The scope of discovery under the Federal Rules is extremely broad," and "the question of relevancy should be construed 'liberally and with common sense' and discovery should be allowed unless the information sought has no conceivable bearing on the case." *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (quoting *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992)). While the party seeking discovery has the burden to establish its relevancy and proportionality, the party objecting has the burden of showing the discovery should not be allowed and doing so through "clarifying, explaining and supporting its objections with competent evidence." *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012) (internal citations omitted).

Here, as plaintiff points out, the timecards he seeks may shed light on whether it was a common practice for company technicians to follow the same informal procedures plaintiff followed, or whether other technicians were aware of and complied with the alleged company policy of recording hours from the beginning of each workday to the end. Hence, the discovery plaintiff seeks could certainly clarify the existence of defendants' timecard policies, if any, and thus the extent of their failure, if any, to properly award plaintiff overtime pay. This evidence therefore has bearing on an underlying issue in this case and is discoverable.

Defendants are correct, however, that it would be unduly burdensome to allow for discovery of all timecards stretching back seven years. At the May 4 status conference, plaintiff indicated that production of installation technician timecards between January 1, 2014, and January 1, 2015, would be sufficient. The Court agrees, and does not think this timeline to be

overly burdensome or disproportionate to the needs of the case when weighed against the possibly highly probative value the production of such documents could provide on a matter directly contested in this case. Defendants are therefore ordered to produce all installation technicians' timecards between January 1, 2014, and January 1, 2015.[1]

## II.     Cell-phone contracts, equipment, and tools

Plaintiff requests additional discovery regarding whether employee deductions for cell phones and equipment were voluntary, as defendants contend, and whether the deductions were for the benefit of the employee, as defendants also contend. Plaintiff requests the contracts with defendants' cell-phone carrier; plaintiff seeks these contracts in an attempt to discover how much defendants paid for each cell-phone line and each cell phone in comparison to how much defendants deducted from each employee.

Plaintiff also requests invoices for equipment and tools that defendants purchased and then deducted from employees' wages. If defendants are charging employees more than the cost of the equipment or tool, then the deductions would not be for the benefit of the employee, plaintiff argues, thus making this information relevant to the underlying case, which involves a claim for wrongful deduction of wages.

Finally, Plaintiff requests the identities of individuals who have refused to voluntarily sign deduction forms or who have used a phone log to opt out of the deduction for company cell-phone charges. This information, plaintiff asserts, will also test the veracity of defendants' deposition testimony that defendants had policies in place that allowed employees to voluntarily opt out of these deduction policies.

---

[1]At the status conference, defendants argued that producing these timecards to plaintiff would necessarily compel defendants to expend tens or hundreds of thousands of dollars in rebutting any arguments plaintiff conjures up as a result of the information contained in the timecards. This may be true, but defendants' own strategic decision in how it chooses to litigate this case is not a reason to restrict production of otherwise discoverable information.

Defendants object, arguing this information is overly broad and irrelevant. They argue Oregon law permits employers to deduct such expenses from employee paychecks so long as doing so is authorized by the employee in writing, it is for the employee's benefit, and it is recorded in the employer's books.

This information is relevant. As defendants acknowledge, they are allowed to deduct these expenses from employee paychecks only so long as employees consented in writing and only so long as it benefited employees and was properly recorded. Documents and other tangible information indicating whether defendants in fact complied with these requirements, then, is relevant information bearing on an issue at stake in this litigation; indeed, whether they did or did not comply speaks to the issue of whether defendants wrongfully deducted expenses from plaintiff's and other employees' salaries, one of plaintiff's claims. Accordingly, defendants are ordered to produce their contracts with their cell-phone carrier, to produce invoices for equipment and tools that defendants purchased and then deducted from employees' wages, and to produce the identities of individuals who have refused to voluntarily sign deduction forms or who have used a phone log to opt out of the deduction for company cell-phone charges.

Like the request for timecards, however, the Court believes plaintiff's open-ended request for all cell-phone contracts, invoices, and individuals who have opted out of automatic deductions is overly broad, overly burdensome, disproportionate to the needs of the case when weighed against any potential benefits the discovery of such a vast amount of information might provide. Instead, the Court believes production of cell-phone contracts, invoices, and individuals who have opted out of automatic deductions between January 1, 2014, and January 1, 2015, is sufficient to satisfy the plaintiff's discovery needs while at the same time limiting any needless burden and expense on the part of defendants. Additionally, the Court believes discovery should

be limited to installation technicians who have refused to voluntarily sign deduction forms or who have used a phone log to opt out of the deduction for company cell-phone charges, rather than all employees of defendants. Because plaintiff worked as an installation technician for defendants, restricting discovery to installation technicians will sufficiently address the issues involved in plaintiff's suit while simultaneously conserving the parties' resources.

## III.    Plaintiff's interrogatories

Plaintiff argues defendants have not provided responsive answers to plaintiff's interrogatories one through six. Defendants' answers to these interrogatories, plaintiff argues, are non-responsive in some instances, answer questions other than the one asked, and use boilerplate objections. The Court addresses each challenged interrogatory.

### A.  Interrogatory number one

The first interrogatory asks defendants to identify persons who have knowledge of the allegations in plaintiff's complaint and a brief summary of the knowledge. Defendants argue they served this same interrogatory on plaintiff and plaintiff objected and argued that the interrogatory asked for information protected by the attorney-client privilege or the work-product doctrine. Defendants have responded with the same objection and say they will respond once plaintiff responds more thoroughly.

A party may propound interrogatories relating to any matter that may be inquired to under Rule 26(b). Fed.R.Civ.P. 33(a). A responding party is obligated to respond to the fullest extent possible, and any objections must be stated with specificity. Fed.R.Civ.P. 33(b)(3)-(4). "In general, a responding party is not required to conduct extensive research in order to answer an interrogatory, but a reasonable effort to respond must be made." *Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013) (internal quotations and citations omitted). "[I]f the information

sought is contained in the responding party's files and records, he or she is under a duty to search the records to provide the answers." *U.S. ex rel. Englund v. L.A. Co.*, 235 F.R.D. 675, 680 (E.D. Cal. 2006) (citing *Govas v. Chalmers*, 965 F.2d 298, 302 (7th Cir.1992)).

Here, the information plaintiff seeks—persons with knowledge of the allegations in plaintiff's complaint—is within defendants' possession; the very premise of plaintiff's lawsuit makes this much clear: Plaintiff alleges defendants violated state and federal minimum wage and overtime laws, unlawfully discriminated against him, and wrongfully deducted wages. Defendants are certainly privy to the identity of those with knowledge of defendants' own internal policies regarding pay, overtime, wage deductions, and more. Responding to such questions, therefore, would not require the type of extensive research that would immunize defendants from answering plaintiff's interrogatory. Defendants are thus ordered to respond to plaintiff's first interrogatory.

Finally, while some of this information may indeed be protected by the attorney-client privilege or the work-product doctrine, defendants may not summarily state that such information is protected by these privileges. *See Green v. Baca*, 219 F.R.D. 485, 491 (C.D. Cal. 2003) (citing Fed.R.Civ.Pro. 26(b)(5)) ("A party may not make a blanket assertion of privilege in response to a discovery request"). Hence, if defendants do claim such a privilege or protection, they must sufficiently describe the nature of the discovery not being produced or disclosed "and do so in a manner that . . . will enable [plaintiff] to assess the claim." Fed.R.Civ.Pro. 26(b)(5)(ii).

## B. Interrogatory number two

Plaintiff's second interrogatory asks defendants to explain the difference between the number of hours plaintiff reported as hours worked from September 20 to October 3, 2015, and

the hours for which defendants credited plaintiff on his corresponding paycheck. Defendant argues this is a contention interrogatory prohibited by this Court's Local Rule ("LR") 33-1.

The word contention has been removed from LR 33-1; the rule now states that it is not prohibited *per se* to inquire about what another party is contending, but that overly broad and general interrogatories are prohibited. Plaintiff's interrogatory is not overly broad; plaintiff simply seeks to know how defendants calculated his hours worked, including overtime hours, an issue clearly relevant to his suit, which alleges defendants improperly calculated his overtime hours. Defendants are therefore ordered to respond to plaintiff's second interrogatory.

## C. Interrogatory number three

Interrogatory three asks defendants to explain why it did not credit plaintiff for working 100.25 hours from September 20 to October 3, 2015, and pay plaintiff 20.25 hours of overtime. Defendants again argue this is a contention interrogatory. For the same reasons as interrogatory two is valid, this interrogatory is as well; defendants' objection is thus overruled.

Nevertheless, defendants have adequately answered this interrogatory. In response to this interrogatory, defendants stated that they did pay plaintiff for the time he properly recorded, and they also denied he was not paid overtime. Rule 33(b)(3) requires each interrogatory to be answered separately and fully, without reference to other interrogatories or documents. Here, defendants did just that. Indeed, in stating that it did in fact credit plaintiff for all hours worked and that plaintiff did not accrue any overtime, defendants answered plaintiff's question in its entirety, and there does not appear to be any further information that would be responsive to this interrogatory. *Sneath*, 292 F.R.D. at 635 ("Because there does not appear to be any further information responsive to this interrogatory, Plaintiff's motion to compel supplemental responses . . . is denied"). While plaintiff may not like the response, this reason alone is insufficient to

entitle him to a different one. *See Harris v. Escamilla*, Case No. 1:13-cv-01354-DAD-MJS (PC), 2016 WL 1224057, at *4 (E.D. Cal. Mar. 29, 2016) ("simply because Plaintiff does not like the response does not mean that he is entitled to a different one").

### D. Interrogatory number four

Plaintiff's fourth interrogatory asks defendants to explain why, for the purpose of calculating overtime, installation technicians are not credited for hours worked from the moment they are required to arrive at the warehouse each morning to the end of the day. Defendants argue this asks for a legal or factual justification and is thus a contention interrogatory. For the same reasons as interrogatories two and three are valid, this interrogatory is as well. As with interrogatory number three, however, defendants have adequately responded; they state installation technicians are paid on a piece-rate basis, not by the hour, and the piece-rate pay lawfully compensates technicians for all hours worked, including overtime, if applicable. Because defendants' response answers plaintiff's interrogatory fully and non-conclusively, their response is sufficient.

### E. Interrogatory number five

Interrogatory number five asks defendants to identify all people that are authorized to sign checks for installation technicians on defendants' behalf. Defendants argue this is overly broad in time and scope and not reasonably calculated to lead to discovery of evidence. Interrogatories, like all discovery, are limited to matters that are relevant to the claim or defense of any party. Fed.R.Civ.P. 33, 26(b)(1). A discovery request is relevant "if there is any possibility that the information sought might be relevant to the subject matter of [the] action." *Jones v. Commander, Kan. Army Ammunitions Plant*, 147 F.R.D. 248, 250 (D. Kan. 1993).

Here, plaintiff is suing defendants for improperly crediting overtime, for discrimination, and for wrongful deduction of wages, among other issues. Hence, the matter of pay is central to plaintiff's claim, and while the individual or individuals authorized to sign employees' checks may ultimately be secondary and more tangentially related to issues such as defendants' policies and procedures, the Court cannot say there is no possibility this information will not prove relevant to the ultimate issues in this case. For instance, by discovering those individuals authorized to sign checks for installation technicians on defendants' behalf, plaintiff may then seek to depose such individuals about their job duties as well as their knowledge, if any, of defendants' overtime-pay policies, wage-deduction practices, and so forth—evidence clearly bearing on matters under contention in this case. Accordingly, this information is discoverable.

The scope of this discovery request is not unlimited, however. *Cabell v. Zorro Prods., Inc.*, 294 F.R.D. 604, 607 (W.D. Wash. 2013). "District courts have broad discretion to determine the scope of discovery." *Id.* (internal citations omitted). If the information sought is overly broad, unduly burdensome, or disproportional in light of "the issues at stake," it is not discoverable. Fed.R.Civ.P. 26(b)(2)(C); *Teller v. Dogge*, No. 2:12-cv-00591-JCM-GWF, 2013 WL 1501445, at *1 (D. Nev. Apr. 10, 2013) (citing *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 253-54 (S.D. Ind. 2000)).

Here, the Court believes plaintiff's open-ended and unqualified request for all people authorized to sign checks for installation technicians on defendants' behalf is far too broad. As with plaintiff's agreement that production of installation technician timecards between January 1, 2014, and January 1, 2015, is sufficient, the Court believes production of all people authorized to sign checks for installation technicians on defendants' behalf between January 1, 2014, and January 1, 2015, rather than all individuals, is more proportional to the needs of the litigation in

this case. The Court thus orders production of the sought-after information in conjunction with this timeline.

**F. Interrogatory number six**

Interrogatory number six asks defendants to explain the process of accounting for and tabulating the work hours reported to payroll and credited toward overtime hours worked. Defendants object, asserting plaintiff has already sufficiently inquired about this during depositions of individuals Eric Edwards and Leo Brown, and defendants have already produced documents used to track and report hours worked. Finally, defendants argue their response to this interrogatory is full and fair.

While this information bears directly on matters at issues in this case, making it discoverable, Defendants' response is sufficient. As discussed, the party responding to an interrogatory is to respond to the interrogatory to the fullest extent possible. Fed.R.Civ.P.33(b)(3). Here, plaintiff asked for the process of accounting and tabulating work hours reported to payroll. In response, defendants provided the following answer: "Installation Technicians are expected to record the time spent on jobs and the time spent driving between jobs on daily reports. They are expected to record any additional working time on time cards. This information is used to calculate hours worked for the purpose of calculating overtime." Resp. to Pl.'s First Set of Interrogs., at 4.

Plaintiff fails to persuasively articulate why this answer is not full and fair; indeed, the answer clearly specifies defendants' process for calculating work hours and thus how overtime is calculated. The Court fails to see how defendants could have answered the question with any more precision. Accordingly, defendants have adequately answered interrogatory number six.

/ / /

## IV. Liability of defendant Snyder and other unnamed individuals

Plaintiff states he has asked questions concerning defendant Snyder and/or other individuals, namely, questions regarding whether they are liable as individuals. According to plaintiff, defendants refuse to answer interrogatories or produce documents responsive to this question.

First, it is unclear whether plaintiff is arguing defendants have failed to properly respond to a Rule 36 request for admission. Rule 36 states in pertinent part:

> A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to facts, the application of law to fact, or opinions about either . . . and the genuineness of any described documents. . . . Each matter must be separately stated. . . . [T]he answer must specifically deny [the matter] or state in detail the reasons why the answering party cannot truthfully admit or deny it.

To the extent plaintiff seeks a response or responses to properly served and adequately written requests for admissions, he is entitled to adequate responses. Moreover, documents and interrogatories related to Snyder's or any other individual's culpability in the alleged actions in this case are highly probative, as the information sought—liability—certainly has a bearing on the case. *See Soto*, 162 F.R.D. at 610 (quoting *Miller*, 141 F.R.D. at 296) ("discovery should be allowed unless the information sought has no conceivable bearing on the case"). Defendants are therefore ordered to produce documents and answer interrogatories bearing on Snyder's or any other individual's liability in this matter, to the extent the information requested is not privileged or otherwise protected.

## V. Documents related to sick leave laws

Finally, Plaintiff contends defendants refuse to produce internal documents related to their policies on sick leave. Plaintiff requests these documents because he alleges defendants

denied plaintiff use of child sick leave and terminated him in January 2016 based on protected activities.

To the extent plaintiff seeks nonprivileged documents touching on defendants' sick leave policies, they are plainly relevant and therefore discoverable. As articulated throughout this opinion and order, relevant information for discovery purposes includes *any* nonprivileged information reasonably calculated to lead to the discovery of admissible evidence, and there is no requirement that the information sought be directly related to a particular issue in this case; rather, "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be presented in the case" and that is proportional to the needs of the case is discoverable. *Shaw v. Experian Info. Sols., Inc.*, 306 F.R.D. 293, 296 (S.D. Cal. 2015) (internal quotations and citations omitted). Accordingly, then, documents addressing a matter that is directly, not merely indirectly, related to a matter at issue in this case—defendants' sick leave policies and their compliance with Oregon law—are, without question, relevant, proportional, and thus discoverable. Defendants are ordered to produce such documents.

## ORDER

For the foregoing reasons, and in line with the analysis set forth above, plaintiff's requests are GRANTED in part and DENIED in part.

It is so ORDERED and DATED this ___9___ day of May, 2017.

_____
MARK D. CLARKE
United States Magistrate Judge