Karen L. O'Connor, OSB No. 953710
karen.oconnor@stoel.com
Caroline J. Livett, OSB No. 151871
caroline.livett@stoel.com
John B. Dudrey, OSB No. 083085
john.dudrey@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

       Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| MATTHEW WILSON, | Case No.:  1:16-CV-00855-CL |
| Plaintiff, | DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | ORAL ARGUMENT REQUESTED |
| DECIBELS OF OREGON, INC., and DENNIS SNYDER, | |
| Defendants. | |

**LOCAL RULE 7.1(a) COMPLIANCE**

Pursuant to LR 7.1(a), counsel for Decibels of Oregon, Inc. and Dennis Snyder

(collectively "Decibels" or "Defendants") certify that they conferred in good faith with plaintiff's

counsel regarding this motion, but the parties were unable to agree.

/ / / / /

/ / / / /

 Page 1   -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## MOTION

Pursuant to Fed. R. Civ. P. 56, Decibels moves for an order granting summary judgment against all of plaintiff's claims for relief.  There is no genuine issue as to material fact regarding these claims, and Decibels is entitled to judgment as a matter of law. This motion is supported by the Memorandum below, the Declaration of Caroline J. Livett ("Livett Decl.") and supporting exhibits, the Declaration of Leo Brown ("Brown Decl.") and supporting exhibits, the Declaration of Pam Skillman ("Skillman Decl.") and supporting exhibits, and the pleadings on file in this action.

## MEMORANDUM IN SUPPORT

### I.        Introduction

Plaintiff, a former Decibels employee, was terminated in January 2016 for excessive absenteeism and performance issues.  In his lawsuit, plaintiff claims that Decibels failed to pay overtime, and that Decibels made unlawful paycheck deductions.  There is no evidence to support plaintiff's claims.  Decibels paid plaintiff on a piece rate basis, and, for any hours worked in excess of 40 in a workweek, Decibels paid plaintiff an overtime premium, in addition to his regular piece rate pay.  Decibels' deductions from plaintiff's paycheck for his personal use of a company cellphone and tools and equipment that plaintiff lost or damaged were authorized by plaintiff and lawful under Oregon law.  Plaintiff's claims fail as a matter of law and should be dismissed with prejudice.

### II.        Plaintiff's Employment With Decibels

Decibels employs technicians to install cable television and internet services for Charter Communications customers.  Decibels hired plaintiff as a technician in October 2012.  (Wilson

dep. 47:20-48:7); Livett Decl. ¶ 2, Ex. A.[1]  Plaintiff's job duties primarily entailed installing cable and internet services in customers' homes.  *Id.*

On June 17, 2014, plaintiff walked off the job without notice, declaring that he felt underappreciated and quit.  *Id*.  After working at another job for just a couple months, plaintiff wanted to go back to Decibels for "the money," and did so in October 2014.  (Wilson dep. 81:12-82:08); Livett Decl. ¶ 2, Ex. A.

During his employment at Decibels, plaintiff's attendance record was abysmal, and he received repeated attendance warnings.  These included:

- January 10, 2015:  written warning for being late to work twice with no call to his supervisor or office staff, as required by company policy.

- September 9, 2015:  written warning for failing to timely call his supervisor to let him know he would not be in for his shift, as required by company policy.  Plaintiff's stated reason (as written on the disciplinary notice) for not calling in was "unforeseen sitter going into labor."

- October 6, 2015:  written warning for not properly reporting that he was going to be out "sick," as required by company policy.

- November 3, 2015:  written warning for excessive absenteeism, including seven unexcused absences in the last 90 days, on August 4, August 27, September 8, September 26, October 4, October 9, and October 30.  Plaintiff was suspended for three days and assured Decibels (by writing on the disciplinary notice) that "further call outs won't be happening."

*Id*.

---

[1] Deposition testimony and exhibits are attached to the Livett Declaration.

Page 3    -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff's inability to follow directions evidenced itself in his job performance as well, and he received repeated disciplinary notices.  These included:

- December 30, 2012:  written disciplinary action for failing to properly maintain his signal meter.

- April 17, 2013:  written disciplinary action for failing to follow company standards with regard to modem tests.

- May 29, 2013:  written disciplinary action for being dishonest about his whereabouts when questioned by management.

- July 21, 2015:  written disciplinary action for failing to follow direct orders from his supervisor.

- September 1, 2015:  written disciplinary action for failing to follow safety procedures. Plaintiff's "excuse" for the safety violation (as written on the disciplinary action form) was "Completely spaced putting cones out.  Was going to move truck and spaced it."

- September 2, 2015:  written disciplinary action for bringing a personal firearm onto company property.  Notably, in his deposition, plaintiff stated that he had purchased the personal firearm after he finished his last installation job for the day and before he went to "refresh" at Decibels' dispatch office.  This is the exact same time period that plaintiff claims he was "working" for his wage and hour claims.

- October 6, 2015:  written disciplinary action for reporting to work with holes in his jeans and his shirt not tucked in, in violation of company policy.  Decibels had warned plaintiff about keeping a neat and clean professional appearance (and had sent plaintiff home to change) just a few days previously.

Page 4    -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

- October 6, 2015:  written disciplinary action for falsifying signal levels and failing to notify management that his signal meter was missing, as required by company policy.

- January 12, 2016:  written disciplinary action for engaging in behavior designed to create discord and lack of harmony among his coworkers.

(Wilson dep. 141:11-21); Livett Decl. ¶ 2, Ex. A.

After assuring Decibels that his attendance would improve and "further call outs won't be happening," plaintiff continued to miss work.   His absences included:

- December 8, 2015:  plaintiff "could not find a babysitter."

- January 7, 2015:  plaintiff's reported that he was "sick."

- January 16, 2016:  plaintiff claimed that he would "be held in contempt of court if [he] didn't take [his] daughter up to Portland on that day."

(Wilson dep. 150:12-151:5); *Id.*; Brown Decl. ¶ 2, Ex. A.

Decibels suspended plaintiff again for excessive absenteeism pending a review of his continued employment.  Livett Decl. ¶ 2, Ex. A.  Based on plaintiff's continued attendance issues, and his other performance problems, Decibels determined that it could not continue to employ plaintiff and terminated his employment, effective January 29, 2016.  *Id.*

### III.    Argument

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "If the moving party meets its initial burden of showing the absence of a material and triable

issue of fact, the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense." *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (internal quotation marks and citation omitted). Although plaintiff's evidence is to be viewed in his favor, plaintiff may not rely on mere allegations, conclusory assertions, or subjective personal judgments to defeat summary judgment. *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). To survive a summary judgment motion, plaintiff must present specific, admissible facts to support his claims.

Plaintiff here cannot present sufficient evidence to create a genuine issue of material fact on any of his claims for relief, and Decibels' Motion for Summary Judgment should be granted.

## A.    Plaintiff Was Properly Paid Overtime

Plaintiff's overtime claim does not survive summary judgment because he cannot point to any workweeks where he was not properly paid overtime for hours worked that exceeded 40 hours in a workweek.

Plaintiff's arguments − including his late-filed submissions from his friends − are nothing more than an attempt to explain his own repeated refusal to follow Decibels' policies. As outlined above, plaintiff routinely ignored various work rules, whether related to safety, attendance, or dress code, in much the same way that he ignored Decibels' expectations about timekeeping. Plaintiff now asserts that he should have been paid from the moment he arrived at the dispatch office in the morning until he arrived home each evening. Mixing in various provisions of the Fair Labor Standards Act ("FLSA"), plaintiff claims that Decibels' use of a piece rate system is unlawful. Plaintiff is wrong.

### 1.    Decibels' lawful piece rate compensation system

Decibels primarily pays its technicians a piece rate, which is lawful under both state and federal law.  In a piece rate compensation system, employees are paid based on the number of pieces (or jobs) they complete, rather than the number of hours they work.  *See* 29 C.F.R. § 778.111; Or. Admin. R. 839-020-0030(3)(b).  The concept behind the piece rate system is that the time it takes employees to complete the task is not relevant.  However, employees are not exempt from the FLSA and Oregon wage and hour law, including minimum wage and overtime requirements, simply because they are paid on a piece rate basis.  This means that the employee's "regular hourly rate," calculated by dividing the total earnings for the week by the total number of hours worked in that workweek, needs to be at least the minimum wage.  *See* 29 C.F.R. § 778.111; Or. Admin. R. 839-020-0030(3)(b).  For overtime, the employee needs to be paid the regular rate for all hours worked (including overtime hours), and an overtime premium equal to one-half the regular rate of pay for all hours worked in excess of 40 in a workweek.  *Id*.

As the Ninth Circuit recently explained:

> For employees who are paid on a piece-rate basis, the regular hourly rate of pay is computed by adding together total earnings for the workweek from piece rates and all other sources (such as production bonuses) and any sums paid for waiting time or other hours worked (except statutory exclusions). This sum is then divided by the number of hours worked in the week for which such compensation was paid, to yield the pieceworker's "regular rate" for that week.  A pieceworker is entitled to be paid the total weekly earnings at this regular rate for all hours worked and overtime equal to one-half this regular rate of pay multiplied by the number of hours worked in excess of 40 in the week.

*Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 996 (9th Cir. 2017) (citing 29 C.F.R. § 778.111(a)) (internal quotation marks and citations omitted).

Here, Decibels' technicians are paid in two ways: (1) a piece rate based on the number and type of cable and internet installation jobs performed, and (2) an hourly rate for other tasks, such as attending meetings and trainings and on installation jobs that are not completed (jobs that "go down"). Brown Decl. ¶ 3. The piece rate and hourly rate compensate technicians for all regular hours worked at a rate well above minimum wage. *Id*.

**2.    Decibels properly tracks all hours worked**

Decibels properly tracks (and keeps records of) all hours worked for the purpose of calculating overtime. Decibels uses two different forms to track hours worked: daily reports and timecards. Brown Decl. ¶ 8. Daily reports correspond to particular installation jobs, and technicians are required to record the time on each installation job and at least 15 minutes of travel time between jobs on their daily reports. *Id*. Timecards are used to track hours worked other than on installation jobs or traveling between installation jobs, for example, time spent at the dispatch office in the morning, in meetings, in trainings, or on jobs that "go down." *Id*. As Mr. Brown explained in his deposition:

> Q:    And so when you are checking the total hours that an employee, an installation technician, has worked, what hours are you including?
>
> A:    It is calculated on the report that's sent to me. It is entered from the hours that the technician states on his daily sheet which should include drive time and separately a time card which logs any time that they have spent doing other tasks or on jobs that have gone down, meetings, et cetera.
>
> Q:    And what about the time from when an employee starts in the morning until they arrive at that first job in the morning? … Is that time included in the calculation of hours?
>
> A:    That should be -- the technician should be documenting their drive time from the office to their first job and documenting on a time card any time that they have in the morning whether it's a task, whether it's, you know, a supervisor meeting, it's a huddle. Any of that stuff should be documented.

Page 8    -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Q:    What about the process of doing check-in in the morning?  Is that something that should be counted towards the hours worked?

A:    That should be in the check-in.

(Brown dep. 21:13-22:13); Livett Decl. ¶ 4, Ex. C.

The law requires that plaintiff be paid for hours he worked − those associated with the piece rate work, and other hours connected to that work, including drive time, prep time, meetings, etc.  That is precisely what Decibels did and does.  Decibels lawfully expects and requires that technicians submit daily reports for their piece rate work and timesheets for their other tasks, so that their hours worked can be tracked and properly paid.

### 3.    Plaintiff received an overtime premium for all overtime hours worked

Decibels pays its technicians an overtime premium for all hours worked in excess of 40 hours in a workweek.  Brown Decl. ¶ 5.  This is *in addition to* the regular piece rate and hourly pay and is calculated by adding 0.5 times the technician's regular hourly rate to that hourly rate. *Id*.  As the Director of Operations for Decibels' Medford location, Leo Brown, explained in his deposition:

A:    Someone works 50 hours.  Say they make $500.

Q:    Uh-huh.

A:    So the ten hours of overtime.  The 50 hours would be divided into the 500 for $10 an hour.  So they were paid 50 hours of straight time for $500.  The half-time of $10 would be five dollars times the ten hours would be $50 for a total of $550.

(Brown dep. 107:14-20); Livett Decl. ¶ 4, Ex. C.  Stated differently, in the example above, an employee who earns $10/hour and works 50 hours would be paid $400 for his regular hours (40 hours x $10/hour), and $150 for his overtime hours (10 hours x $15/hour), for a total of $550.

Decibels' use of an overtime premium is exactly what federal and state law require:

> [F]or example, if the employee has worked 50 hours and has earned $491 at piece rates for 46 hours of productive work and in addition has been compensated at $8.00 an hour for 4 hours of waiting time, the total compensation, $523.00, must be divided by the total hours of work, 50, to arrive at the regular hourly rate of pay—$10.46.  For the 10 hours of overtime the employee is entitled to additional compensation of $52.30 (10 hours at $5.23). For the week's work the employee is thus entitled to a total of $575.30 (which is equivalent to 40 hours at $10.46 plus 10 overtime hours at $15.69).

29 C.F.R. § 778.111(a).

> For example, an employee who has earned $500 during a 50 hour work week must be paid an additional sum of $50 for the ten overtime hours, or a total of $550 (50 hours at $10 per hour and the ten overtime hours at $5.00 per hour).

Or. Admin. R. 839-020-0030(3)(b)(B).

Plaintiff is apparently confused that his paychecks do not show 40 hours of "straight time" and 10 hours of overtime.  However, plaintiff's confusion does not obviate the fact that 40 hours of "straight time" plus 10 hours of overtime is exactly the same - mathematically - as 50 hours of straight time and 10 hours of "half time."  In either event, for hours worked in excess of 40 in a workweek, plaintiff received his "straight time" pay for those additional hours, plus an additional premium of "half time," which results, precisely, in the required "time and a half" for hours worked in excess of 40 in a workweek.

As reflected on plaintiff's payroll records, plaintiff was paid an overtime premium throughout his employment at Decibels.  Brown Decl. ¶ 5, Ex. C.  While plaintiff's Complaint alleges that he was only paid overtime at a rate of $10.18 per hour, *see* Compl. ¶ 26, this is based on a fundamental misunderstanding of piece rate compensation and a misreading of Decibels' payroll records.  The $10.18 per hour is an overtime premium, not an "overtime rate," and is in addition to the regular piece rate pay. *Id*.  In other words, the overtime pay is added to

the regular piece rate pay, which results in the requisite 1.5 multiplier for hours over 40 in a

workweek.  For plaintiff, this led to an overtime rate of around $30 an hour.  *Id.*

In sum, plaintiff cannot point to any workweeks in which he was not properly paid

overtime, and his apparent confusion regarding Defendants' payroll records and his paystubs is

insufficient to create a genuine issue of material fact on his claims.

### 4.    Technicians do not work continuously from the start of the day until the end of the day

In addition to confusion about piece rate compensation, plaintiff's overtime claim is also

based on his belief that he is entitled to be paid for all time from the start of the day to the end of

the day.  Plaintiff is wrong.  Indeed, if plaintiff were correct, it would be difficult (if not

impossible) for an employer to ever have a lawful piece rate compensation system.  Under

Decibels' lawful piece rate system, plaintiff's "hours worked" were when he was on a job,

driving between jobs, or performing other work tasks.  Plaintiff's waiting time between jobs did

not count as hours worked because plaintiff could use the time effectively for his own purposes.

*See* 29 C.F.R. § 785.16(a) ("Periods during which an employee is completely relieved from duty

and which are long enough to enable him to use the time effectively for his own purposes are not

hours worked."); *Rutti v. Lojack Corp.*, 596 F.3d 1046 (9th Cir. 2010) (intervening time that is

long enough to enable an employee to use the time effectively for his own purposes is not

compensable work time).

To be clear, Decibels' technicians are free to do as they please between jobs (whether it

be smoking, eating, shopping, or just sitting and waiting at the next job).  Brown Decl. ¶ 9.

Technicians spend their time between jobs in a variety of different ways; for instance, some

technicians go home, some technicians go to the park and smoke cigarettes, and some

technicians just go and sit at the next job.  *Id.*  Plaintiff even admitted in his deposition that he

could generally use the time as he pleased:

> Q:    And would you know where the next job was?
>
> A:    Yes.
>
> Q:    Okay.
>
> A:    Generally we have -- every job we have for the day would show up on Tech Net
>        like which time frame. If you look at the job, like if it was in the time frame after
>        lunch, find out where it was going to be.
>
> Q:    Yup. So could you head in that general direction and go to the store or stop and
>        read, sit in a park?
>
> A:    If we -- so like if I had a job over on West 11th Street, and I was at the office, I
>        mean, I could go sit somewhere and wait until it's that time. I mean, I could go
>        grab pretty much wherever as long as I'm sitting there waiting by the company
>        rig. I mean, sometimes I  would go to 7/Eleven, grab a coffee or just sit at
>        the park, sit down at the warehouse. Just depends on where you are at the time.
>
> Q:    But as long as you were heading in the general direction of the next job, you
>        could pretty much stop and hang out wherever you wanted?
>
> A:    Essentially. Like so if I had a job at Ashland, and I'm already in Ashland, I pretty
>        much had to stay in Ashland until it was time. I wasn't able to go home for my
>        downtime.
>
> Q:    Other than that, being able to go home, were there any particular limits on how
>        you could use your downtime?
>
> A:    Not that I can really recall.

(Wilson dep. 94:22-95:25); Livett Decl. ¶ 2, Ex. A.

Plaintiff's own testimony amply illustrates that there were no meaningful restrictions on

how he could use the time between his piece rate jobs, and plaintiff has no evidence from which

the Court could conclude that he had significant time between jobs that should have been

considered hours worked.

Plaintiff was also paid a piece rate, which further demonstrates that he did not characterize waiting time as work. *See Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers*, 971 F.2d 347 (9th Cir. 1992) (if employees are only paid for time spent actually working, and not for time spent merely waiting to work, then that may create an implied agreement that the parties do not characterize waiting time as work); *Brigham v. Eugene Water & Elec. Bd.*, 357 F.3d 931, 939 (9th Cir. 2004) ("An agreement between the parties which provides at least some type of compensation for on-call waiting time may suggest the parties characterize waiting time as work.  Conversely, an agreement pursuant to which the employees are to be paid only for time spent actually working, and not merely waiting to work, may suggest the parties do not characterize waiting time as work." (citation omitted)).

     **5.**     **Plaintiff mischaracterizes the time that Decibels counts as "hours worked"**

Plaintiff's alternative theory appears to be that he was not paid for the time he spent at the dispatch office in the morning, for the weekly equipment refresh, and/or for time between jobs. Plaintiff is wrong.

Technicians were not, as plaintiff argues, only credited for hours where they were actually working on installation jobs; instead, Decibels considers all hours worked, including time spent driving between jobs, in meetings and trainings, and on jobs that "go down" when calculating overtime pay.  Brown Decl. ¶ 8.  As Mr. Brown explained in his deposition:

> Q:     Okay.  So an employee is only credited for the hours spent performing piece rate work?...
>
> A:     No.
>
> Q:     No.
>
> A:     No.
>
> Q:     Why is that statement incorrect? …

Page 13  -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

A:      Because we are paying their time on job, the travel time, and any time cards that are submitted for jobs that go down and other things we have discussed.

Q:      In calculating whether or not an employee has been suffered or permitted to work more than 40 hours in a week, what are all the time calculations that Decibels uses to determine whether or not an employee has worked more than 40 hours?

A:      We use their dailies and their time cards that are submitted.

(Brown dep. 76:12-77:8);  Livett Decl. ¶ 4, Ex. C.

Technicians were also credited for time spent at the dispatch office in the morning gathering equipment or at the end of the day refreshing equipment.  As Mr. Brown explained in his deposition, technicians were expected to fill out timecards for this time:

Q:      And so if Mr. Wilson was required to show up at the warehouse at 7:15 on this day, September 23, 2015, would that roughly be an additional hour of time that's not reflected on either the Daily Report or in the Workforce Express printout?

A:      If he was required [to show up], again a time card would be filled out for purposes of payment.

(Brown dep. 91:24-92:6); *Id.*

Q:      How are the installation technicians-- how does Decibels account for the Installation technician's time spent driving from their last job back to the warehouse and going through the refresh process?

A:      The driver time should be notated on the work order.  Or excuse me.  On the Daily Report.  And any--

Q:      Go ahead.

A:      And any additional time should be recorded on a time card.

(Brown dep. 131:20-132:3); *Id.*

Decibels also counts drive time as hours worked.  Technicians were paid a *minimum* of 15 minutes of drive time, not a maximum, and if it took more than 15 minutes to drive between jobs, technicians were expected to record the actual amount of drive time in a column on the

Page 14  -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

daily report.  Brown Decl. ¶ 8.  Plaintiff did so at least once during his employment at Decibels

when he had a long drive between jobs.  As plaintiff explained in his deposition:

> Q:      (Referencing Exhibit 11)  But there's a note on the bottom that says, I think, one
> hour drive from Gold Beach to Brookings.  So you added an hour and a half to the
> total, is that right?
>
> A:      It should be two point -- there was five jobs so should be 1.25 hours [of drive
> time]. So yeah, I had an extra hour and a half [of drive time] for there and back.
>
> Q:      Okay. So when you had to go way beyond-- I don't know what we want to call it,
> the service zone, so when you are driving more than 15 minutes, you would put it
> on the Daily Reports?
>
> A:      On this particular one like it shows it was an hour drive.  And I wasn't-- I mean,
> there's no way I would take half an hour for two hours' drive time in the middle
> of the day.

(Wilson dep. 118:12-25), Livett Decl. ¶ 2, Ex. A.

In sum, to the extent plaintiff claims he was not paid overtime, it is based on an improper

characterization of Decibels' piece rate compensation system and the way that Decibels counts

hours worked.  There is no material dispute that, in addition to actual time on installation jobs,

Decibels counts time spent driving between jobs, in meetings and trainings, and performing all

other work tasks as hours worked.  Plaintiff cannot establish that he was not paid overtime, and

the Court should grant Decibels' motion for summary judgment on plaintiff's overtime claim.

### 6.      Plaintiff failed to follow Decibels' timekeeping policies

 Finally, to the extent there are any workweeks in which plaintiff was not paid enough

overtime (which Decibels denies), it was because plaintiff failed to follow policies and

procedures that are in place specifically to ensure that plaintiff would be properly paid (for

example, filling out timecards).

Upon hire, all technicians go through a training period, during which they are trained on

various Company expectations and policies.  Brown Decl. ¶ 8.  This training includes how to

Page 15   -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

record hours worked on the daily reports and timecards, when to use daily reports and timecards, and the reasons for using each. *Id*. Although plaintiff received training on when to submit timecards and how to fill out his daily reports, he frequently failed to correctly fill out his daily reports, rarely submitted timecards, and did not submit timecards at all for the time spent at the dispatch office in the morning and on "refresh." *Id*. In other words, plaintiff blatantly disregarded the training he received from Decibels and Company policy. *Id*. This is not surprising, given plaintiff's utter disregard for Decibels' other policies, including attendance, calling in to report absences, appropriate work attire, and the like. Indeed, until the eve of the filing of this Motion, plaintiff maintained that he had not appropriately been provided with leave under the Oregon Family Leave Act, despite the fact that he never requested such leave during his employment. In short, Plaintiff's compliance with Decibels' policies was far from exemplary.

Plaintiff cannot, on the one hand, ignore Decibels' timekeeping procedures and then at the same time allege that he was not properly paid for hours that he never reported he worked. *See Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1230-31 (10th Cir. 2012) (granting employer's motion for summary judgment on FLSA overtime claim where employee did not properly record the hours he worked, explaining: "There was no failure by ScriptPro to keep accurate records, but there was a failure by Mr. Brown to comply with ScriptPro's timekeeping system. Under these circumstances, where the employee fails to notify the employer through the established overtime record-keeping system, the failure to pay overtime is not a FLSA violation.").

For example, technicians are expected to record their drive time in a separate column on their daily reports. Brown Decl. ¶ 8. Plaintiff rarely did this. *Id*. As Eric Edwards, the Technical Operations Manager for Decibels' Medford office, explained in his deposition:

Q:      Okay.  So in order for an employee to get credited for the drive time, they were supposed to fill it in on the totals?  Then were supposed to write it into one of the columns?

A:      In order for the drive time to be considered as part of their hourly accumulations, the employee must note it in the proper manner.

(Edwards dep. 186:5-12); Livett Decl. ¶ 3, Ex. B.  Indeed, Decibels relies on technicians to accurately and honestly record their drive time; otherwise there is no way for Decibels to know how long a particular drive took.  *See Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (when an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer, the employer's failure to pay for the overtime hours is not a FLSA violation).

Similarly, as explained above, technicians are expected to use timecards to record time spent at the dispatch office gathering or refreshing equipment, time spent in meetings and trainings, and time performing other work tasks that are not related to specific installation jobs. Brown Decl. ¶ 8.  Plaintiff rarely submitted timecards, and did not submit timecards at all for the time he spent at the dispatch office and at "refresh*." Id.*  In his deposition, plaintiff claimed that this was because he did not understand the process for filling out timecards. [2]  Like the "stuff" in Decibels' employee handbook, there was some stuff about his training with regard to filling out timecards that plaintiff "just spaced." (Wilson dep. 51:19-52:17), Livett Decl. ¶ 2, Ex. A.

But, in reality, the reason that plaintiff did not submit timecards is because the time at the dispatch office in the morning and at "refresh" was extremely brief.  Brown Decl.  ¶ 10.  The time at the dispatch office in the morning is literally a check-in so that Decibels can ensure that

---

[2] At the same time that plaintiff claims that he was confused about the process for filing out timecards, he is seeking to join the employee who trained him on how to fill out his timecards, Ryan Hemming, as a plaintiff.  (Wilson dep. 63:8-63:22); Livett Decl. ¶ 2, Ex. A

technicians are actually going to work that day and can provide them with any additional

equipment they need.  *Id.*  Technicians are not required to stay at the dispatch office for any

length of time, and the actual check-in should take five minutes or less.  *Id.*  To the extent

plaintiff spent longer than that at the dispatch office in the morning, it was on his own personal

time and not hours worked.  Plaintiff spent the vast majority of his time at the dispatch office

smoking cigarettes and chatting with his friends.  *Id.*  This is not hours worked and plaintiff was

not entitled to be compensated for this time.

Similarly, the time at "refresh," which happens just once a week at the end of the day, is

very short.  *Id.*  Technicians literally just return any unused equipment or equipment that

customers have returned.  *Id.*  Like in the morning, technicians are not required to stay at the

dispatch office for any length of time, and the actual "refresh" should take five minutes or less.

*Id.*  Again, to the extent plaintiff spent any longer than that at the dispatch office, it was on his

own personal time and not hours worked.  In fact, as explained above, plaintiff spent time at

"refresh" showing off a firearm that he had just purchased after his last installation job.  (Wilson

dep. 141:11-141:21); Livett Decl. ¶ 2, Ex. A.  This was in complete violation of Company policy

(not to mention dangerous) and is not hours worked.

In sum, to the extent plaintiff was not filing out timecards, it was not because he was

"confused" about the process (which he was extensively trained on); it was because he decided

that filling out a timecard for a few minutes was not worth  his time when he was already

receiving a significant amount of piece rate pay.  Plaintiff cannot, on the one hand, claim that

Decibels was not properly calculating the hours he worked when this is based on plaintiff's own

failure to follow Company policies and properly record the hours he worked.   Moreover, even

though it is Decibels' policy to pay its technicians for time at the dispatch office during the

"check-in" and at "refresh," Decibels is not legally required to, as this time is de minimis. *See, e.g., Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984) ("7 to 8 minutes spent by employees reading the log book and exchanging information, even if not preliminary, was de minimis and therefore not compensable").

In sum, plaintiff was paid an overtime premium for any hours worked in excess of 40 in a workweek that he properly recorded as hours worked. While plaintiff would prefer to be paid from the moment he showed up at the dispatch office to when he got home at night, and while that might be easier for him to calculate, that is not what the law requires or what piece rate compensation entails. Plaintiff does not get to choose how he is compensated, and Decibels' piece rate compensation system was lawful. Plaintiff cannot point to any instances that he was not properly paid, and the Court should grant Decibels' motion for summary judgment on plaintiff's overtime claim.

**B.     Plaintiff Authorized The Paycheck Deductions And His Unlawful Deduction Claims Fail As A Matter of Law**

Decibels' paycheck deductions for plaintiff's personal use of a company cellphone and tools and equipment that plaintiff lost or damaged were lawful, and plaintiff's claim otherwise fails as a matter of law.

**1.     Applicable law**

Oregon law permits deductions from employee paychecks if the deduction is (1) authorized in writing by the employee, (2) for the employee's benefit, and (3) recorded in the employer's books. Or. Rev. Stat. § 652.610. Paycheck deductions are also lawful if (1) the employee voluntarily signs an authorization, (2) the ultimate recipient of the money withheld is not the employer, and (3) the deduction is recorded in the employer's books. *Id*.

Page 19   -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

2.      **The cellphone deduction was lawful**

Plaintiff was required to have and was provided with a company cellphone so that he could respond to work-related customer and dispatch calls.  Brown Decl. ¶ 6; Skillman Decl. ¶ 5. Technicians can choose between using the cellphone only for business (e.g., responding to customer and dispatch calls), or for both business and personal reasons.  *Id*.  If the technician only uses the cellphone for business, then Decibels provides the cellphone to the technician at no cost.  *Id*.  Technicians are, however, required to log their calls to show that they are not using the phone for personal use.  *Id*. Conversely, if the technician chooses to use the company cellphone for personal calls in addition to the work-related calls, they are charged approximately $35 a month ($17.50 per two-week pay period), which is deducted from the employee's paycheck.  *Id*.

Here, plaintiff chose to use his company cellphone for both business and personal calls and signed an authorization that Decibels could deduct $17.50 from his paycheck each pay period for his personal use of the company cellphone.  Livett Decl. ¶ 2, Ex. A.  Plaintiff was therefore provided with a cellphone that he could and did use for the rate of approximately $35/month ($17.50 per two-week pay period).  Skillman Decl. ¶ 5.

This deduction was clearly for plaintiff's benefit, as he was able to make personal use of a cellphone at a rate (approximately $35 a month) much less than he might otherwise have to pay.  Indeed, Decibels paid for the actual device itself, and also paid Verizon Wireless, the service provider, more than $50/month for plaintiff's use of the phone.  *Id*.  The ultimate recipient of plaintiff's  portion of the charge was Verizon, not Decibels, and the deductions were properly recorded in Decibels' books.  *Id*.  The paycheck deduction for plaintiff's personal use of a company cellphone was lawful under two separate provisions of Oregon law.  *See* Or. Rev. Stat. § 652.610.

Page 20  -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### 3.    The tool and equipment deduction was lawful

Plaintiff, like all technicians, was expected to pay for tools and equipment that he lost or damaged.  Skillman Decl. ¶ 6.  Plaintiff lost and damaged tools and equipment multiple times during his employment.  *Id*.  For most of these instances, rather than have to pay for the cost of the tools or equipment himself, plaintiff signed a deduction form authorizing Decibels to deduct the replacement cost from his paycheck.  *Id*.; Livett Decl. ¶ 3, Ex. B.

Plaintiff signed the deduction forms voluntarily, and for his benefit - Decibels is able to buy tools and equipment in bulk and often at discount, so the cost to plaintiff was significantly less than he might otherwise have to pay.  Skillman Decl. ¶ 6.  The ultimate recipient of the charge was the supplier of the tools and equipment (for example, Grainger Industrial Supply), not Decibels, and the deductions were properly recorded in Decibels' books.  *Id*.  Like the deduction for plaintiff's personal use of the company cellphone, the paycheck deductions for tools and equipment were lawful under two separate provisions of Oregon law.  *See* Or. Rev. Stat. § 652.610.

In sum, the paycheck deductions for plaintiff's personal use of a company cellphone and tools and equipment that plaintiff lost or damaged were perfectly lawful under Oregon law. While plaintiff may not like that he was charged for his personal use of a company cellphone and to replace lost and damaged tools and equipment, plaintiff voluntarily agreed to these charges, which were for his benefit and lawful under Oregon law.  The Court should grant Decibels' Motion for Summary Judgment on plaintiff's deduction claims.

/ / / / /

/ / / / /

/ / / / /

Page 21  -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## IV.    CONCLUSION

For the reasons stated above, the Court should grant Decibels' Motion for Summary

Judgment and dismiss all of plaintiff's claims for relief with prejudice.

DATED:  June 30, 2017.                    STOEL RIVES LLP


                                          *s/ Caroline J. Livett*
                                          Karen L. O'Connor, OSB No. 953710
                                          Caroline J. Livett, OSB No. 151871
                                          John B. Dudrey, OSB No. 083085
                                          Telephone:  (503) 224-3380

                                          Attorneys for Defendant